## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CASE NO.:

ENVISION INSURANCE COMPANY, an
Ohio corporation,

     Plaintiff,

v.

WAKELY CONSULTING GROUP, INC., a
Florida corporation and BRIAN WEIBLE,
Individually,

     Defendants.

_____/

### COMPLAINT

    Plaintiff, ENVISION INSURANCE COMPANY, an Ohio corporation, by and through

its undersigned counsel hereby files this Complaint against Defendants, WAKELY

CONSULTING GROUP, INC., a Florida corporation and BRIAN WEIBLE, Individually, and in

support thereof states as follows:

    1.    This is a suit asserting causes of action arising from the professional

malpractice/negligence, negligence and negligent misrepresentations of each Defendant in

connection with their performance of consulting, actuarial and other services provided to

Plaintiff.

### PARTIES

    2.    Plaintiff, ENVISION INSURANCE COMPANY ("ENVISION" or "Plaintiff"), is

an Ohio corporation with its principal place of business in Summit County, Ohio.

    3.    Defendant, WAKELY CONSULTING GROUP, INC. ("WAKELY"), is a

Florida corporation with its principal place of business in Pinellas County, Florida.

4.     Defendant, BRIAN WEIBLE, Individually ("WEIBLE"), is an individual over 18 years of age residing in Pinellas County, Florida and is otherwise sui juris.

5.     At all times relevant herein, WEIBLE was a consulting actuary associated with WAKELY.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) over the claims of ENVISION as complete diversity of citizenship exists among the opposing parties and the amount in controversy exceeds $75,000.00 excluding interest and costs.

7.     This Court has personal jurisdiction over each Defendant as both WAKELY and WEIBLE engage in business in Pinellas County, Florida and within the Middle District of Florida of the U.S. District Court.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(1) as each Defendant engages in business in Pinellas County, Florida and within the Middle District of Florida of the U.S. District Court.

9.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(2) as a substantial part of the events or omissions giving rise to this claim occurred in Pinellas County, Florida and within the Middle District of Florida of the U.S. District Court.

## CONDITIONS PRECEDENT

10.     All conditions precedent to these actions have been performed, waived, or have occurred.

## FACTUAL ALLEGATIONS

### Background

11.     The Medicare Prescription Drug Improvement and Modernization Act of 2003 ("MMA") created Medicare Part D, a federal program administered by the Centers for Medicare

2

and Medicaid Services ("CMS") to cover and subsidize the costs of prescription drugs for Medicare program beneficiaries in the United States ("Beneficiaries").

12.     The Medicare Part D prescription drug program ("Program") was established effective January 1, 2006 by MMA. Under this Program, private companies which are approved by and contract with CMS to develop prescription drug plans ("PDPs", or "PDP" individually) in compliance with CMS guidelines, under which prescription drug coverage is provided to Beneficiaries who enroll in their respective PDPs across the U.S. These private companies ("Insurers") are licensed by states to assume financial and insurance risk under the Program.

13.     In order to receive CMS approval and participate in the Program, the private companies are required to first submit a comprehensive application for consideration by CMS. The application to contract with CMS (the "Application") requires the prospective Insurer to include, among other data and assumptions, pro forma financial and risk-based capital projections and revenue projections for their PDPs, in compliance with a set of precise actuarial methodologies mandated by CMS ("CMS Guidelines").

14.     If approved by CMS, an Insurer may then submit a bid and plan benefit package ("Bid") to CMS to provide PDP services. The Bid must be submitted and approved in the year prior to the one in which the Insurer intends to provide PDP services. If CMS approves the Bid, the Insurer may than solicit Beneficiaries to enroll in their PDP in the U.S. region in which they successfully submitted the Bid.

15.     CMS divides the United States into 34 distinct regions ("Regions", or "Region" individually) and requires Insurers to place separate and distinct bids for any and all Regions in which the Insurer may wish to provide PDP services.

16.     At all times relevant herein, if an Insurer intended on placing a Bid in a Region, the Insurer was first required to submit a Bid for a standard PDP coverage plan according to

3

specifications established by CMS ("Standard Coverage Plan"). Insurers were then allowed to submit a separate and unique Bid conforming to their respective business and pricing model in that Region as well.

17.     In order for a Insurer to submit a Bid, according to 42 C.F.R. 423.265(c)(3), such Bid has to be prepared in accordance with CMS Guidelines and certified by a qualified actuary (who is required to be a member of the American Academy of Actuaries ("AAA")). As a result of this process, in many cases, the qualified actuary provides the Insurer with certain elements to be included in the Bid.

18.     Using instructions from CMS, Insurers calculate the bid amount using the bid-pricing tool (the "BPT"), which is a collection of spreadsheets developed by CMS.  Using the BPT, Insurers, or the actuarial firms they employ, estimate certain bid elements which include, without limitation, utilization, drug costs, and administrative fees (the "Bid Elements"), and then the BPT calculates the bid amount.

19.     To estimate the Bid Elements, Insurers, or the actuarial firms they employ, apply actuarial assumptions to base period data which include, without limitation, actual utilization, drug cost, and administrative fee data from a previous year of providing drug coverage. When an Insurer is a new entrant to the Program and does not have base period data from past experience, the Insurer, or the actuarial firm they employ, must use reasonable assumptions of utilization and costs instead. When applying actuarial assumptions to base period data, an Insurer's actuaries must follow CMS Guidelines and the applicable Actuarial Standards of Practice ("ASP") as promulgated by the Actuarial Standards Board ("ASB").

20.     In addition, actuaries consult with the Insurer with respect to the elements which comprise the Bid and the Insurer relies on the actuary's knowledge with respect to the methodologies or components to be included in the Bid.

4

21.     As compensation, an Insurer receives revenue in the form of insurance premiums paid by the Beneficiaries themselves directly to the Insurer and CMS subsidies for providing prescription drugs to the Beneficiaries enrolled in their respective PDPs.

**Defendants' Services to the Plaintiff**

22.     On or about January 30, 2006, executives of Envision Pharmaceutical Services, an Ohio Corporation ("EPS") met with Defendants WAKELY and WEIBLE to discuss a prospective PDP business plan and pricing model ("PDP Plan").

23.     Prior to this meeting, and for the months leading to the commencement of its PDP business, EPS had very limited professional experience with regard to the Program and the process of creating and submitting Bids for PDPs.

24.     At the meeting, Defendants WAKELY and WEIBLE represented they had other Program clients, had a good understanding of the Program, and considerable experience in preparing and developing Bids for PDPs and could be a valuable asset in assisting EPS with running the business in a profitable manner.

25.     At or around the time of the meeting, executives with EPS determined it was necessary to hire an actuarial and consulting firm such as WAKELY to develop their PDP Plan in order to ensure that their entrance into the Medicare Part D market would be a successful and profitable endeavor.

26.     As a follow up to the January 30th meeting, on or about February 1, 2006, WAKELY agreed to provide actuarial and consulting services in connection with the creation of their PDP Plan, as evidenced by the letter addressed to Mr. Kevin Nagle on February 1, 2006 (the "Engagement Letter"), a true and correct copy of which Engagement Letter is attached as Exhibit "A".

27.     Specifically, WAKELY was retained for the purposes of:

5

a.   Procuring professional expertise and advice to assist in the development and formulation of Plaintiff's PDP Plan that would conform to Plaintiff's benefits structure in a profitable manner.

b.   Developing the assumptions and methods used in ENVISION's Application to CMS.

c.   Developing the assumptions and methods used in ENVISION's Bids for each Region.

d.   Certifying that the Bid Elements used for the Bids were in compliance with CMS Guidelines.

28.   In reliance upon WAKELY's ability to assist and provide the experience necessary to run the PDP business in a profitable manner, executives of EPS formed Envision Insurance Company, an Ohio corporation on February 8, 2006 ("ENVISION").

29.   ENVISION is a privately-held life and health insurance company licensed in numerous states that is under contract with CMS to offer and provide PDP's to Beneficiaries nationwide.

30.   Before and during the time ENVISION engaged WAKELY to provide actuarial, consulting and other professional services ("Professional Services"), each Defendant held themselves out as having the experience and qualifications to provide the Professional Services necessary to assist in the development and formulation of Plaintiff's Bids and BPTs that would conform to CMS Guidelines and maximize reimbursements from CMS.

31.   Before and during the time ENVISION engaged WAKELY to provide Professional Services, each Defendant also held themselves out as having the experience and qualifications to provide the Professional Services relating to the PDP Plan and Application.

32.     In the Engagement Letter, Defendants WAKELY and WEIBLE asserted, in an effort to obtain ENVISION's business, that in the contract year of 2006, they had experience compiling "8-10 standalone PDP bids" and provided managed care consulting for over seventeen (17) years.

33.     At all times herein, Defendant WEIBLE served as ENVISION's primary contact at WAKELY.

34.     At the outset of and throughout the period of time at issue, WAKELY served as the Plaintiff's actuarial and consulting firm, and at the request of WAKELY, Plaintiff provided each Defendant with extensive documentation concerning Plaintiff, including, but not limited to, Plaintiff's PDP Plan provisions, benefits structure and other Program participant data.

35.     On or about March 8, 2006, in preparing for the submission of ENVISION's Application to CMS ("Envision Application"), WAKELY sent a report to ENVISION with the actuarial assumptions and valuations of ENVISION's PDPs (the "PDP Actuarial Report"). A true and correct copy of the PDP Actuarial Report is attached as Exhibit "B".

36.     On or about March 9, 2006, WEIBLE executed and submitted a Statement of Actuarial Opinion to ENVISION for the purpose of certifying that the assumptions and methods used in determining the claim reserves, actuarial liabilities, and related items utilized in the PDP Actuarial Report were calculated using sound actuarial methods in compliance with the applicable ASP (the "Statement of Actuarial Opinion"). A true and correct copy of the Statement of Actuarial Opinion is attached as Exhibit "C".

37.     On or about June 6, 2006, WAKELY submitted a revision of the PDP Actuarial Report to ENVISION regarding the calculation of expected losses in agreement with Appendix VIII of the Application (the "PDP Actuarial Report Revision"), a true and correct copy of which PDP Actuarial Report Revision is attached as Exhibit "D". The results of the PDP Actuarial

Report Revision were developed based on the same pro forma statements of Exhibit E of the PDP Actuarial Report with the exception of the amount of non-claim (SG&A) expenses, contributed capital and surplus that were included, as WAKELY modified the statements and corresponding Appendix by updating the non-claim expenses that were imputed to ENVISION by their parent company.

38.     On or about June 6, 2006, WEIBLE submitted another Statement of Actuarial Opinion to ENVISION for the purpose of certifying that the assumptions and methods used in determining the claim reserves, actuarial liabilities, and related items utilized in the PDP Actuarial Report Revision and Appendix VIII of the Application were calculated using sound actuarial methods in compliance with the applicable ASP (the "Second Statement of Actuarial Opinion"). a true and correct copy of the Second Statement of Actuarial Opinion is attached as Exhibit "E".

39.     ENVISION's Application was approved by CMS on or about March 1, 2006.

40.     From on or about April 24, 2006 through on or about August 28, 2006, WAKELY developed and prepared 68 Bids and their respective Bid Elements for ENVISION's PDPs, and then submitted them to CMS for their approval ("ENVISION Bids").

41.     Thirty-Four (34) of the ENVISION Bids were for the Standard Coverage Plan ("Standard Coverage Bids") which were submitted for each respective Region.

42.     With WAKELY's assistance and expertise, a benefit-rich PDP was developed which provided enrolled Beneficiaries with enhanced benefits well above and beyond the Standard Coverage Plan, including, without limitation, greater prescription drug coverage and overall cost-sharing ("Enhanced Coverage Plan").

43.     The Enhanced Coverage Plan targeted a more affluent beneficiary market as the cost of providing such additional and superior coverage dramatically raised the costs of

administering the PDP, and in turn, required significantly greater premiums to offset these costs. As a new entrant in this Program and to the PDP market, ENVISION relied extensively on WAKELY's purported experience to properly conform this benefit design to a profitable PDP format.

44.     The remaining thirty-four (34) ENVISION Bids were for ENVISION's Enhanced Coverage Plan ("Enhanced Coverage Bids") which were submitted for each respective Region as well.

45.     The underlying pharmacy and population data used in preparing the ENVISION Bids and their Bid Elements were initially derived from the prescription claims data arising under ENVISION's drug discount card related to a Medicare population in 2005. Thereafter, WAKELY supposedly adjusted these claims figures according to a larger base of aggregate claims data from their database. The latter claims data was derived from Florida Medicare claimants. The resulting adjusted claims were trended forward to produce a 2007 continuance table deemed appropriate for Florida (Region 11).

46.     On or about July 14, 2006, a formulary impact study was performed by WAKELY to estimate the average cost per claim as well as the distribution of claims among the drug tiers as submitted to CMS in the formulary file, which study WAKELY used to produce the figures required in the ENVISION Bid for the Florida Region ("Florida Bid").

47.     ENVISION Bids for Regions other than Florida were produced by WAKELY through adjusting the utilization and unit costs at the member level.

48.     On or about August 28, 2006, Gregg Fann, a Senior Consulting Actuary of WAKELY, drafted and submitted the Final Certification in accordance with 42 C.F.R. 423.265(c)(3) as to certify the Bid Elements used in the ENVISION Bids.

49.     On or around August 28, 2006, ENVISION was approved by CMS to provide PDP services under both the Standard Coverage Plan and Enhanced Coverage Plan to each Region as CMS approved all of the ENVISION Bids.

50.     ENVISION then solicited Beneficiaries in all Regions and provided PDP services by and through the Standard Coverage Plan and Enhanced Coverage Plan in the contract year of 2007.

51.     In return for WAKELY's provision of Professional Services, Plaintiff paid WAKELY substantial fees, totaling $225, 419.00 for years 2006 and 2007.

52.     For the contract year of 2007, the actual claims of the all of the enrolled Beneficiaries of ENVISION's PDPs net of CMS reimbursements exceeded WAKELY's predicted claims in excess of $6,500,000.00 for all of the ENVISION Bids.

53.     Of these losses sustained by ENVISION in the contract year of 2007, approximately ninety percent (90%) of them arose from the Enhanced Coverage Bids.

54.     The actual claims of ENVISION's enrolled Beneficiaries in the contract year of 2007 dramatically exceeded the claims projected by WAKELY and WEIBLE as reflected in the ENVISION Bids due to a multitude of actuarial and/or consulting oversights and errors, including, without limitation:

        a.      Each Defendants' failure to apply proper and reasonable actuarial
        assumptions and to make appropriate adjustments to the base period claims data
        of the Bid Elements in many instances, caused the actual claims of ENVISION's
        enrolled Beneficiaries to greatly exceed those projected by WAKELY, resulting
        in tremendous losses. More specifically:

                1.      By using prescription claims arising under ENVISION's drug
                discount card as the basis or experience by which to predict utilization of

the underlying pharmacy and population data for the ENVISION Bids, each Defendant had to make considerable and proper adjustments to this data since it was not directly applicable to a fully insured product like the PDP. Each Defendant failed to make the proper actuarial adjustments as it did not adequately and reasonably account for the differences in the populations in an appropriate manner nor did either Defendant advise Plaintiff of the potential magnitude that the use of this data could have on the overall profitability of the PDPs, and;

2.      ENVISION offered drugs in their Enhanced Coverage Plan that were not covered by Medicare and in turn, that portion of the program operated as pure insurance. Each Defendant thus used inadequate claim cost assumptions in developing the Enhanced Coverage Bids with respect to the utilization of these over-the-counter and non-Medicare drugs as the actual claims in 2007 were significantly greater than those projected by the Defendants.

b.      ENVISION offered a point of sale ("POS") rebate to enrolled Beneficiaries under both PDPs and clearly instructed each Defendant to prepare the ENVISION Bids with this feature. However, each Defendant mistakenly reduced the overall monthly Beneficiary premiums by the amount they estimated that the rebate would cost ENVISION in the average month rather than applying the rebate at the POS of each transaction. This error resulted in an inappropriate reduction of premiums charged in the ENVISION Bids.

c.      By offering far greater benefits in the Enhanced Coverage Plan, ENVISION's claims cost risk associated with offering such a benefit-rich product

was not properly appraised by each Defendant. As a result, each Defendant inaccurately and unreasonably projected the claims losses of these benefits in the Enhanced Coverage Bids by failing to address the risk of loss associated with misestimating the utilization of those benefits. This oversight seriously escalated the claims costs of the Enhanced Coverage Bids, costing ENVISION tremendous losses.

55.     For illustrative purposes, a prescription base period experience bid sheet from the 2009 PDP Bid from Region 32 ("Region 32 Bid Sheet") reflects the losses ENVISION incurred for providing PDP services in that particular Region in the contract year of 2007, a true and correct copy of which Region 32 Bid Sheet is attached as Exhibit "F".

56.     The Region 32 Bid Sheet details how ENVISION's cost of providing PDP services in this Region in 2007 greatly exceeded the revenues it generated by a total of $59.86 per enrolled Beneficiary, per month ("Member Months"). The Member Months that ENVISION suffered such losses totaled 17,484 in this bid sheet alone, resulting in a loss of $1,046,592.24.

57.     WAKELY and WEIBLE continued to provide Professional Services to ENVISION related to its PDPs during 2007 for the contract year of 2008.

58.     During 2007, WAKELY and WEIBLE developed and submitted Bids for ENVISION for the contract year of 2008.

59.     WAKELY and WEIBLE continued to provide Professional Services to ENVISION until on or about March 5, 2008.

60.     ENVISION incurred significant losses for the contract year of 2008 as a result of each Defendant's malpractice and/or negligence.

**Defendants' Negligence and Malpractice**

61.     Each Defendant employed erroneous actuarial assumptions, and/or methods and/or decision-making criteria in their provision of Professional Services to Plaintiff which led to a misstatement of ENVISION's PDP claims liabilities in the contract year of 2007.

62.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to advise Plaintiff in a competent manner on matters which they rendered actuarial opinions or advice to Plaintiff.

63.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to exercise due diligence and reasonable care when rendering actuarial advice and opinions to Plaintiff.

64.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to ensure the actuarial assumptions were reasonably prudent.

65.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to act in accordance with sound actuarial methods in compliance with applicable ASP's in preparing the PDP Actuarial Report and/or the PDP Actuarial Report Revision for the ENVISION Application.

66.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to act in accordance with sound actuarial methods in compliance with applicable ASP's in preparing the ENVISION Bids and Bid Elements.

67.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to act in accordance with sound actuarial methods in compliance with various ASP's, including, without limitation, ASP No. 8, No. 16, No. 23, No. 25 or No. 31.

68.     Each Defendant, in their provision of Professional Services to Plaintiff, failed to use reasonable care in the performance of their actuarial and/or consulting services for Plaintiff.

69. Each Defendant, in their provision of Professional Services to Plaintiff, otherwise failed to act in a manner consistent with the care and skill required of an actuary and/or consultant under like circumstances.

70. Through negligent disregard of their respective professional responsibilities to the Plaintiff, each Defendant, beginning on or about February 1, 2006, until the respective cessation of services to Plaintiff, failed to procure the necessary professional expertise and advice in assisting in the development and formulation of Plaintiff's PDP Plan, and/or Standard Coverage Plan and/or Enhanced Benefit Plan in a profitable manner.

71. Through negligent disregard of their respective professional responsibilities to the Plaintiff, each Defendant, beginning on or about February 1, 2006, until the respective cessation of services to Plaintiff, failed to reasonably develop accurate assumptions and methods used in determining the actuarial items associated with the ENVISION Application.

72. Through negligent disregard of their respective professional responsibilities to the Plaintiff, each Defendant, beginning on or about February 1, 2006, until the respective cessation of services to Plaintiff, failed to reasonably develop accurate assumptions and methods used in determining the actuarial items associated with the ENVISION Bids and Bid Elements in each Region.

73. Through negligent disregard of their respective professional responsibilities to the Plaintiff, each Defendant, beginning on or about February 1, 2006, until the respective cessation of services to Plaintiff, failed to disclose to Plaintiff the potential magnitude that the use of inappropriate base period claims data would have on the results of its PDPs.

74. Despite each Defendants' professed expertise and experience on the matters referenced above, each Defendant failed to discover the egregious errors in Plaintiff's PDP Plan, and/or Standard Coverage Plan and/or Enhanced Benefit Plan.

14

75.     Despite each Defendants' professed expertise and experience on the matters referenced above, each Defendant failed to discover the egregious errors in its assumptions and methods used in determining the actuarial items associated with the ENVISION Application and the ENVISION Bids in each Region.

76.     Each Defendant knew, or reasonably should have known, that Plaintiff would rely on each Defendant's professional expertise and advice in assisting in the development and formulation of Plaintiff's PDP Plan, Standard Coverage Plan and Enhanced Benefit Plan.

77.     Each Defendant knew, or reasonably should have known, that Plaintiff would rely on the actuarial valuations and assumptions used in the PDP Actuarial Report, PDP Actuarial Report Revision, the Florida Bid, and the remaining ENVISION Bids extrapolated from the Florida Bid to determine how to price ENVISION's PDPs.

78.     Plaintiff did in fact rely on each Defendant's professional expertise and advice in assisting in the development and formulation of Plaintiff's PDP Plan, Standard Coverage Plan and Enhanced Benefit Plan.

79.     Plaintiff did in fact rely on the actuarial valuations and assumptions used in the PDP Actuarial Report, PDP Actuarial Report Revision, the Florida Bid, and the remaining ENVISION Bids extrapolated from the Florida Bid to determine how to price ENVISION's PDPs for 2007.

80.     As a proximate result of Plaintiff's reliance on the expertise and advice of each Defendant as described above, Plaintiff suffered significant damages as the costs of providing PDP services through the ENVISION Bids in the contract years of 2007 and 2008 far exceeded the revenue Plaintiff produced in this endeavor.

## COUNT 1
## PROFESSIONAL NEGLIGENCE/MALPRACTICE
(Against WAKELY)

81.     Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

82.     At all times relevant herein, Plaintiff sought actuarial and consulting advice from WAKELY, and WAKELY was retained by Plaintiff to perform Professional Services, including without limitation, actuarial services toward the creation of the ENVISION Application, ENVISION Bids and Bid Elements in WAKELY's professional capacity as an actuarial firm.

83.     WAKELY held itself out as having the necessary experience and qualifications to provide the actuarial services to assist in the development and formulation of the ENVISION Bids and BPTs that would conform to CMS Guidelines and maximize reimbursements from CMS.

84.     WAKELY held itself out as having the necessary experience and qualifications to provide Professional Services relating to the PDP Plan and the ENVISION Application.

85.     WAKELY held itself out as having the necessary experience and qualifications to develop and formulate both the Standard Coverage Plan and Enhanced Benefit Plan in a manner profitable for Plaintiff.

86.     WAKELY owed Plaintiff a duty to exercise due care and skill in providing the Professional Services to Plaintiff.

87.     WAKELY owed Plaintiff a duty to perform Professional Services for Plaintiff in a manner consistent with a reasonably prudent actuary or consultant acting in similar circumstances.

88.     WAKELY owed Plaintiff a duty to perform Professional Services in accordance with sound actuarial methods in compliance with the applicable ASPs.

89.    WAKELY breached its above-described duties to Plaintiff to perform Professional Services with the skill, diligence and knowledge possessed by actuaries or consultants acting in similar circumstances.

90.    As a direct and proximate result of WAKELY's above described breaches of duty and failure to provide Professional Services to Plaintiff consistent with a reasonably prudent actuary or consultant, Plaintiff has suffered significant damages in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff demands judgment against WAKELY for professional negligence/malpractice including, without limitation, damages in an amount determined at trial, applicable interest, costs and expenses of this action, and such other and further relief as the Court deems just and proper.

## COUNT II
## PROFESSIONAL NEGLIGENCE/MALPRACTICE
(Against WEIBLE)

91.    Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

92.    At all times relevant herein, Plaintiff sought actuarial and consulting advice from WEIBLE, and WEIBLE was retained by Plaintiff to perform Professional Services, including without limitation, actuarial services toward the creation of the ENVISION Application, ENVISION Bids and Bid Elements in WEIBLE's professional capacity as a member of the AAA.

93.    WEIBLE held himself out as having the necessary experience and qualifications to provide the actuarial services to assist in the development and formulation of the ENVISION Bids and BPTs that would conform to CMS Guidelines, maximize reimbursements from CMS, and derive a profit for Plaintiff.

94.     WEIBLE held himself out as having the necessary experience and qualifications to provide the Professional Services relating to the PDP Plan and the ENVISION Application.

95.     WEIBLE held himself out as having the necessary experience and qualifications to develop and formulate both the Standard Coverage Plan and Enhanced Benefit Plan in a manner that would ultimately be profitable for Plaintiff.

96.     On or about March 9, 2006, WEIBLE executed and submitted a Statement of Actuarial Opinion for the purpose of certifying that the assumptions and methods used in determining the claim reserves, actuarial liabilities, and related items utilized in the PDP Actuarial Report were calculated using sound actuarial methods in compliance with the applicable ASP. See Statement of Actuarial Opinion which is attached hereto as Exhibit "C".

97.     On or about June 6, 2006, WEIBLE submitted Second Statement of Actuarial Opinion for the purpose of certifying that the assumptions and methods used in determining the claim reserves, actuarial liabilities, and related items utilized in the PDP Actuarial Report Revision and Appendix VIII of the Application were calculated using sound actuarial methods in compliance with the applicable ASP. See Second Statement of Actuarial Opinion which is attached hereto as Exhibit "E".

98.     WEIBLE owed Plaintiff a duty to exercise due care and skill in providing Professional Services to Plaintiff.

99.     WEIBLE owed Plaintiff a duty to perform Professional Services for Plaintiff in a manner consistent with a reasonably prudent actuary or consultant acting under similar circumstances.

100.    WEIBLE owed Plaintiff a duty to perform Professional Services in accordance with sound actuarial methods in compliance with all applicable ASPs.

101.    WEIBLE breached his above-described duties to Plaintiff to perform Professional Services with the skill, diligence and knowledge possessed by actuaries or consultants acting under similar circumstances.

102.    As a direct and proximate result of WEIBLE's above-described breaches of duty and failure to provide Professional Services to Plaintiff consistent with a reasonably prudent actuary or consultant, Plaintiff has suffered significant damages in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff demands judgment against WEIBLE for professional negligence/malpractice including, without limitation, damages in an amount determined at trial, applicable interest, costs and expenses of this action, and such other and further relief as the Court deems just and proper.

## COUNT III
## NEGLIGENCE
(Against WAKELY)

103.    Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

104.    At all times relevant herein, WAKELY was retained by Plaintiff to perform Professional Services in WAKELY's professional capacity as an actuarial and/or consulting firm.

105.    WAKELY held itself out as having the experience and qualifications to provide the actuarial services necessary to assist in the development and formulation of the ENVISION Bids and BPTs that would conform to CMS Guidelines and maximize reimbursements from CMS.

106.    WAKELY held itself out as having the necessary experience and qualifications to provide the Professional Services relating to the PDP Plan and the ENVISION Application.

107.   WAKELY held itself out as having the necessary experience and qualifications to develop and formulate both the Standard Coverage Plan and Enhanced Benefit Plan in a manner that would be profitable for Plaintiff.

108.   WAKELY owed Plaintiff a duty to exercise due care and skill in providing Professional Services to Plaintiff.

109.   WAKELY owed Plaintiff a duty to perform Professional Services it was providing to Plaintiff in a manner consistent with a reasonably prudent actuary and/or consultant acting in similar circumstances.

110.   WAKELY owed Plaintiff a duty to perform Professional Services in accordance with sound actuarial methods in compliance with all applicable ASPs.

111.   WAKELY breached its above-described duties to Plaintiff to perform Professional Services with the skill, diligence and knowledge possessed by actuaries and/or consultants acting in similar circumstances.

112.   As a direct and proximate result of WAKELY's above-described breaches of duty and failure to provide to Plaintiff Professional Services consistent with a reasonably prudent actuary and/or consultant, Plaintiff has suffered significant damages in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff demands judgment against WAKELY for negligence, including, without limitation an award of damages in an amount determined at trial, applicable interest, costs and expenses of this action and such other and further relief as the Court deems just and proper.

## COUNT IV
## NEGLIGENCE
(Against WEIBLE)

113.    Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

114.    At all times relevant herein, WEIBLE was retained by Plaintiff to perform Professional Services in WEIBLE's professional capacity as an actuary and/or consultant.

115.    WEIBLE held himself out as having the experience and qualifications to provide the actuarial services necessary to assist in the development and formulation of the ENVISION Bids and BPTs that would conform to CMS Guidelines and maximize reimbursements from CMS.

116.    WEIBLE held himself out as having the necessary experience and qualifications to provide the Professional Services relating to the PDP Plan and the ENVISION Application.

117.    WEIBLE held himself out as having the necessary experience and qualifications to develop and formulate both the Standard Coverage Plan and Enhanced Benefit Plan in a manner that would be profitable for Plaintiff.

118.    On or about March 9, 2006, WEIBLE executed and submitted a Statement of Actuarial Opinion for the purpose of certifying that the assumptions and methods used in determining the claim reserves, actuarial liabilities, and related items utilized in the PDP Actuarial Report were calculated using sound actuarial methods in compliance with the applicable ASP. See Statement of Actuarial Opinion which is attached hereto as Exhibit "C".

119.    On or about June 6, 2006, WEIBLE submitted a Second Statement of Actuarial Opinion for the purpose of certifying that the assumptions and methods used in determining the

claim reserves, actuarial liabilities, and related items utilized in the PDP Actuarial Report Revision and Appendix VIII of the Application were calculated using sound actuarial methods in compliance with the applicable ASP. See Second Statement of Actuarial Opinion which is attached hereto as Exhibit "E".

120.   WEIBLE owed Plaintiff a duty to exercise due care and skill in providing its Professional Services to Plaintiff.

121.   WEIBLE owed Plaintiff a duty to perform Professional Services it was providing to Plaintiff in a manner consistent with a reasonably prudent actuary and/or consultant acting in similar circumstances.

122.   WEIBLE owed Plaintiff a duty to perform Professional Services in accordance with sound actuarial methods in compliance with all applicable ASPs.

123.   WEIBLE breached his above-described duties to Plaintiff to perform Professional Services with the skill, diligence and knowledge possessed by actuaries and/or consultants acting in similar circumstances.

124.   As a direct and proximate result of WEIBLE's above-described breaches of duty and failure to provide Plaintiff Professional Services consistent with a reasonably prudent actuary and/or consultant, Plaintiff has suffered significant damages in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff demands judgment against WEIBLE for negligence, including, without limitation an award of damages in an amount determined at trial, applicable interest, costs and expenses of this action and such other and further relief as the Court deems just and proper.

## COUNT V
## NEGLIGENT MISREPRESENTATION
(Against WAKELY)

125. Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

126. From on or about January 30, 2006 through February 1, 2006, WAKELY misrepresented to Plaintiff that WAKELY was properly experienced in preparing the type of PDP Bids and Bid Elements that Plaintiff then required.

127. From on or about January 30, 2006 through February 1, 2006, WAKELY misrepresented to Plaintiff that WAKELY was experienced in and capable of preparing a proficient PDP Plan that would conform to Plaintiff's benefits structure in a profitable fashion.

128. From on or about January 30, 2006 through March 9, 2006, WAKELY misrepresented to Plaintiff that WAKELY was experienced in and capable of preparing the Standard Coverage Plan and Enhanced Coverage Plan in a proficient manner.

129. At all times relevant herein, WAKELY misrepresented to Plaintiff that WAKELY's underlying actuarial assumptions, and/or method, and/or decision-making criteria as used in the creation of the ENVISION Application and/or ENVISION Bids were compliant with sound actuarial methods in conformity with the applicable ASP.

130. WAKELY either knew the aforementioned misrepresentations were false when made to Plaintiff, made the misrepresentations to Plaintiff without knowledge of their respective truth or falsity, or should have known that the respective representations to Plaintiff were false when made.

131. WAKELY made the aforementioned misrepresentations with the intention to induce Plaintiff to act upon any and/or all of said misrepresentations.

132.    Plaintiff was thus induced to act upon these misrepresentations by WAKELY and did thereafter act in justifiable reliance upon any said misrepresentations of WAKELY, causing Plaintiff to suffer significant damages in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff demands judgment against WAKELY for negligent misrepresentation, including, without limitation an award of damages in an amount determined at trial, applicable interest, costs and expenses of this action and such other and further relief as the Court deems just and proper.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
(Against WEIBLE)

133.    Plaintiff incorporates by reference Paragraphs 1 through 80 as fully set forth herein.

134.    From on or about January 30, 2006 through February 1, 2006, WEIBLE misrepresented to Plaintiff that was properly experienced in preparing the type of PDP Bids and Bid Elements that Plaintiff then required.

135.    From on or about January 30, 2006 through February 1, 2006, WEIBLE misrepresented to Plaintiff that he and WEIBLE were experienced in and capable of preparing a proficient PDP Plan that would conform to Plaintiff's benefits structure in a profitable fashion.

136.    From on or about January 30, 2006 through March 9, 2006, WEIBLE misrepresented to Plaintiff that WEIBLE was experienced in and capable of preparing the Standard Coverage Plan and Enhanced Coverage Plan in a proficient manner.

137.    At all times relevant herein, WEIBLE misrepresented to Plaintiff that WEIBLE's underlying actuarial assumptions, and/or method, and/or decision-making criteria as used in the

creation of the ENVISION Application and/or ENVISION Bids were compliant with sound actuarial methods in conformity with the applicable ASP.

138.    WEIBLE either knew the aforementioned misrepresentations were false when made to Plaintiff, made the misrepresentations to Plaintiff without knowledge of their respective truth or falsity, or should have known that the respective representations to Plaintiff were false when made.

139.    WEIBLE made the aforementioned misrepresentations with the intention to induce Plaintiff to act upon any and/or all of said misrepresentations.

140.    Plaintiff was thus induced to act upon these misrepresentations by WEIBLE and did thereafter act in justifiable reliance upon any said misrepresentations of WEIBLE, causing Plaintiff to suffer significant damages in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff demands judgment against WEIBLE for negligent misrepresentation, including, without limitation an award of damages in an amount determined at trial, applicable interest, costs and expenses of this action and such other and further relief as the Court deems just and proper.

By: _____
James W. Carpenter, Esquire
Trial Counsel for Plaintiff
Florida Bar Number: 654256


ANGELO & BANTA, P.A.
SunTrust Center, Suite 850
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
Telephone:    954-766-9930
Facsimile:    954-766-9937
Email:        JWC@angelolaw.com